# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GERARDO CRUZ-SANCHEZ, by and through his successor-in-interest Paula Garcia Rivera, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, et al., <br><br> Defendants. | Case No.: 17cv569 BEN (NLS) <br><br> **ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE No. 1** <br><br> [ECF Nos. 55, 56[1]] |

   Before the Court is a Joint Motion for Determination of Discovery Dispute No. 1, filed by Plaintiffs and Defendant CoreCivic, Inc. ("CoreCivic"), which addresses the parties' dispute regarding CoreCivic's responses to Plaintiffs' Request for Production (Sets Five and Six) Nos. 143, 144, 148, and 149.  ECF No. 55 at 2.

///

///

---

[1] CoreCivic separately filed its memorandum of points and authorities as ECF No. 56.

1

## I. BACKGROUND

According to the allegations in Plaintiffs' Second Amended Complaint, the United States arrested Gerardo Cruz-Sanchez in early February 2016 as a material witness to the crime of alien-smuggling. ECF No. 41 ¶ 1. He was not charged with a crime, but because he could not afford bail, he was incarcerated in the Otay Mesa Detention Center ("OMDC"), which is run by CoreCivic. Id.

A chest x-ray administered on February 9, 2016, showed no signs of tuberculosis or pneumonia and Mr. Cruz-Sanchez was admitted to the detention center on February 11, 2016. Id. ¶¶ 1, 14. A few days later, Mr. Cruz-Sanchez developed a headache, sore throat, painful burning sensation, persistent cough, nasal congestion, fatigue, and loss of appetite. Id. ¶ 24. On February 14, 2016, Mr. Cruz-Sanchez submitted a sick call request and was seen by a nurse who noted that his appointment was due to an upper respiratory infection. Id. ¶¶ 27-28. However, instead of ordering a chest x-ray or referring him to a physician, she gave him 200 milligrams of Ibuprofen and sent him back to his cell. Id. ¶ 31.

Mr. Cruz-Sanchez's symptoms worsened, so two days later he saw another nurse and reported a productive cough, body aches, a sore throat, and a severe level of pain. Id. ¶¶ 34-35. In response, the nurse gave him additional Ibuprofen tablets as well as salt packets and sent him back to his cell. Id. ¶ 38. The next day, Mr. Cruz-Sanchez submitted another sick call request and was seen by a physician's assistant. Id. ¶ 39. He reported fever at night, chills, nausea through the day, lack of appetite, pain, body aches, and a scratchy throat. Id. ¶¶ 40-41. The physician's assistant noted in Mr. Cruz-Sanchez's chart that he had "viral etiology vs. bacterial or allergy," and then gave Mr. Cruz-Sanchez more Ibuprofen and some Promethazine (an allergy medication) and returned him to his cell. Id. ¶¶ 42, 48.

On February 21, 2016, Mr. Cruz-Sanchez again sought medical attention. Id. ¶ 49. After a nurse sent him back to his cell, he began coughing up blood all over his clothing and bed sheets. Id. ¶ 53. His cellmate, Alejandro Chavez-Lopez, pleaded with

Defendant C.O. Landin and other staff to provide Mr. Cruz-Sanchez with medical care, but to no avail. Id. ¶ 54. Between February 22th and February 26th, Mr. Cruz-Sanchez's condition deteriorated to the point where he was unable to talk or swallow food and he developed shortness of breath, respiratory distress, and wheezing, but he was not provided with any medical care. Id. ¶¶ 55-58. Defendant Landin allegedly mocked Mr. Cruz-Sanchez for complaining during this time, refused to assist him, and told Mr. Chavez-Lopez that Mr. Cruz-Sanchez "needs to be nearly dead to be taken to the hospital." Id. ¶¶ 63-68.

The morning of February 26, 2016, Mr. Cruz-Sanchez could not get up from his bed, which was covered in blood. Id. ¶ 72. Mr. Chavez-Lopez and another detainee picked him up and dragged him to a table in the common area to get him to eat. Id. Mr. Cruz-Sanchez coughed up blood on the table and Defendant Landin then yelled at him for making a mess. Id. Thereafter, Mr. Cruz-Sanchez was taken to CoreCivic's medical facility. Id. ¶ 73. The doctor who examined him diagnosed Mr. Cruz-Sanchez with "acute respiratory distress w/burning chest pain, cough, subcut emphysema, hypoxemia, tachypnea, tachycardia – suspect spontaneous pneumothorax vs. other cardio pulmonary or GI etiology." Id. ¶ 76. Someone from the medical facility called 911 and Mr. Cruz-Sanchez was transported to Scripps Mercy Hospital in Chula Vista, California, where he was placed on mechanical ventilation and diagnosed with "pneumomediastinum with extensive subcutaneous emphysema, hypoxemia, acute kidney injury, healthcare associated pneumonia, new onset of diabetes and hypokalemia." Id. ¶ 78. Three days later Mr. Cruz-Sanchez died. Id. ¶ 80.

## II. LEGAL STANDARD

Rule 34 of the Federal Rules of Civil Procedure allows a party to request that another party "permit the requesting party or its representative to inspect, copy, test, or sample [documents] in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). If the producing party objects in whole or in part to the request, it must "state with specificity the grounds for objecting to the request, including the reasons."

3

17cv569 BEN (NLS)

1 | Fed. R. Civ. P. 34(b)(2)(B).

2 | The scope of information discoverable under Rule 34 is governed by Rule 26, which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. Id.

## III. DISCUSSION

The instant dispute centers around Plaintiffs' request for call logs and recordings of telephone calls made at OMDC between February 13, 2016 and March 3, 2016. Mr. Cruz-Sanchez was assigned to J-Pod open-bay dorm room 106 for the duration of his time at OMDC. ECF No. 56-2 ¶¶ 15-16; ECF No. 55-2, Ex. G. The open-bay dorm rooms house up to eight detainees. Id. ¶ 10.

According to Gary Burcham, an attorney assisting Plaintiffs with the factual investigation of the case, he asked material witness attorney Stacey A. Kartchner whether she knew of any detainees who may have witnessed Mr. Cruz-Sanchez's health crisis in February 2016. ECF No. 55-3 ¶¶ 1, 3. Ms. Karchner identified Jose Soto-Garcia and his wife, Sandra Murillo, as potential witnesses. Id. ¶ 3. Mr. Burcham then spoke with Ms. Murillo, who confirmed that her husband was detained at OMDC in February 2016 and had spoken to her about Mr. Cruz-Sanchez being terribly ill. Id. ¶ 4. On November 3, 2017, Mr. Brucham spoke with Mr. Soto-Garcia, who confirmed that he told his wife that he saw Mr. Cruz-Sanchez vomit blood in the mess hall on February 26, 2016. Id. ¶ 5. However, since that day, Mr. Burcham has been unable to make contact with Mr. Soto-Garcia. Id. ¶ 6. Plaintiffs seek discovery of Mr. Soto-Garcia's telephone calls as well as those made by other inmates detained in J-Pod Unit 106 during the same time frame as Mr. Cruz-Sanchez.

### a. Request for Production Nos. 143 and 144:

Request for Production ("RFP") No. 143 seeks "the call logs documenting phone calls made by Jose Soto-Garcia from Otay Mesa Detention Center [] between February 13, 2016 through March 3, 2016." ECF No. 55-2, Ex. E.

RFP No. 144 seeks "recordings of telephone calls made by Jose Soto-Garcia from OMDC between February 13, 2016 through March 3, 2016." Id.

CoreCivic objects that the call logs have no relevance to whether Mr. Cruz-Sanchez was denied access to medical care. ECF No. 55 at 4. With regard to the recordings, CoreCivic contends that the request is unduly burdensome because it seeks disclosure of third-party detainee information which, without a release or authorization from Immigration and Customs Enforcement or the United States Marshals Service, would require CoreCivic to violate the terms and conditions of its contract with the Office of the Federal Detention Trustee. Id. Additionally, CoreCivic objects that the records are not relevant or proportional to the needs of the case, given that Mr. Cruz-Sanchez had seven encounters with medical personnel. Id.

As an initial matter, the Court roundly rejects CoreCivic's argument that records documenting Mr. Cruz-Sanchez's encounters with medical staff provide sufficient evidence to render other evidence of what transpired irrelevant or excessive. The fact that Mr. Cruz-Sanchez now is deceased, despite those medical encounters, suggests that additional evidence is warranted.

Under the facts of this case, the recordings are relevant to show what symptoms Mr. Cruz-Sanchez displayed, when and how he asked for medical care, and what responses or treatment he received from CoreCivic staff. Plaintiffs' counsel has spoken with Mr. Soto-Garcia and his wife and, based on their statements, has good reason to believe the recordings will contain contemporaneous impressions of Mr. Cruz-Sanchez's condition, requests for help, the responses he received from the guards, and any medical

treatment he received.[2] Though CoreCivic argues that Mr. Soto-Garcia's stay at OMDC only overlapped Mr. Cruz-Sanchez's for about a day, given that a CoreCivic employee described the OMDC facility as "an unrestricted, 'open-movement' facility which allows detainees to move from one area to another without escorts" (ECF No. 56-2, Ex. 1 ¶ 7), Mr. Soto-Garcia may indeed have encountered Mr. Cruz-Sanchez during that time and have provided relevant information to his wife in a subsequent telephone call. While likely all parties involved might prefer that Mr. Soto-Garcia be made available for deposition, Mr. Burcham's declaration makes clear that Plaintiffs have attempted to contact Mr. Soto-Garcia again, but without success. Indeed, Rule 26 allows consideration of "the parties' relative access to relevant information" and that factors into the Court's consideration here. Fed. R. Civ. P. 26(b)(1). The Court is cognizant of the difficulty of locating material witnesses and some other immigration detainees after they are released. The dearth of evidence that results when the only witnesses who are not defendants (or employees of defendants) are missing makes the discovery Plaintiffs seek all the more necessary.

Additionally, the Court agrees with Plaintiffs that the call logs and recordings must go hand-in-hand when evaluating relevancy. The call logs provide vital context to the recordings such as when the calls were made, how long they lasted, and to what telephone number they were made. Production of the logs also potentially will enable Plaintiffs' counsel to narrow her request for recordings to only those calls exceeding a certain duration (i.e. calls likely to have involved a substantive message or discussion as opposed to a hang-up).

Having concluded that the discovery Plaintiffs seek is relevant and proportional to the needs of the case, the Court turns to the confidentiality concerns expressed by

---

[2] Though the parties briefly address the potential admissibility of this evidence, the Court finds any evaluation of admissibility premature. Information need not be admissible to be discoverable, Fed. R. Civ. P. 26(b)(1), and these recordings also may lead to the discovery of other admissible evidence or to other witnesses.

CoreCivic. Plaintiffs cite to United States v. Van Poyck, 77 F.3d 285, 290-91 (9th Cir. 1996) as having clearly established that prisoners have no reasonable expectation of privacy in outbound telephone calls from a detention facility. ECF No. 55 at 3. CoreCivic responds that, though Mr. Soto-Garcia may have been aware that his calls were being monitored, as a nonparty, he should be protected against disclosure of personal conversations in discovery. Id. at 6 (citing Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC, No. 17cv803-CMA-NYW, 2017 WL 4278494, at *7 (D. Colo. Sept. 27, 2017)).[3] In Charles Schwab, the plaintiff sought via subpoena forensic imaging of a nonparty's cell phone in an effort to obtain text message and customer contact information allegedly being withheld in a related action to which the nonparty was a party. Charles Schwab, 2017 WL 4278494, at *7. Because the imaging necessarily would capture information not at all relevant to the action, the court concluded that the request was overbroad. Id. Though the court acknowledged that it could narrow or modify an overbroad request, it declined to do so and quashed the subpoena topic. Id.

The Court is not persuaded that Charles Schwab should govern this case. First, the nonparty in that case was not in custody. As a detainee, Mr. Soto-Garcia did not have a reasonable expectation of privacy in his calls. That being said, the Court is cognizant of the fact that a substantial portion of the discussions between him and his wife may be wholly unrelated to Mr. Cruz-Sanchez. But whereas the court in Charles Schwab declined to exercise its authority to modify the request, this Court finds it appropriate to allow discovery of the recordings with some limitation. Specifically, the Court will require that the material be shielded from public disclosure pursuant to the terms of the protective order that already has been entered in this case (see ECF No. 21). See Fed. R. Civ. P. 26(c)(1); Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522, 566 (1987) ("[a] court may 'make any order which justice

---

[3] The Court finds CoreCivic's assertion of confidentiality on Mr. Soto-Garcia's behalf somewhat disingenuous, given that CoreCivic already has produced transcripts of recordings between Mr. Chavez-Lopez and his wife, Maribel, without obtaining a signed release from nonparty Maribel.

requires' to limit discovery, including an order permitting discovery only on specified terms and conditions, by a particular discovery method, or with limitation in scope to certain matters").

Designating these records as "Confidential Information" under the terms of the protective order also should resolve CoreCivic's concern that disclosing the recordings will cause it to breach its contract with the government. The Court notes that the contract CoreCivic attached requires only that "[p]olicy and procedures shall be developed to ensure the confidentiality and security of all detainee files." ECF No. 56-2, Ex. 2. CoreCivic does not explain why confidentiality cannot be maintained via the protective order and by filing any transcripts of the records under seal.[4]

In light of the Court's finding that this evidence is relevant, the Court orders CoreCivic to produce documents responsive to RFP Nos. 143 and 144 pursuant to the terms of the protective order.

### b. Request for Production Nos. 148 and 149:

RFP No. 148 seeks "the call logs documenting phone calls made by detainees housed in J-Pod Unit 106 from [] OMDC between February 13, 2016 through March 3, 2016." ECF No. 55-2, Ex. F.

RFP No. 149 seeks "recordings of the telephone calls made by detainees housed in J-Pod Unit 106 from OMDC between February 13, 2016 through March 3, 2016." Id.

CoreCivic raises the same objections to these requests as to RFP Nos. 143-144 and also objects that the requests are overbroad as to time and not proportional to the needs of the case in that the occupants of the eight beds in J-Pod Unit 106 turn over rather quickly and some of the detainees may not even have overlapped with Mr. Cruz-Sanchez. ECF No. 55 at 7, 9-10. Plaintiffs respond that at least seven detainees were housed with Mr. Cruz-Sanchez who may have heard or observed the guard(s) interactions with Mr.

---

[4] The Court also notes that, to date, the United States has not objected or expressed concern about CoreCivic potentially breaching the contract.

Chavez-Lopez and Mr. Cruz-Sanchez and who may have described these interactions during phone calls to third parties even after Mr. Cruz-Sanchez left.

The Court finds that Plaintiffs' requests seek relevant information in that they may help Plaintiffs to identify other witnesses and evidence as to Mr. Cruz-Sanchez's condition and the guard(s) and/or medical staff's responsive statements or actions. Plaintiffs have narrowly tailored the requests to only those inmates in an eight bed pod. While more than seven other detainees may have occupied these beds during the time frame laid out by Plaintiffs, the number of individuals there during a three week span is not likely to be enormous. The Court also finds that extending the time frame slightly beyond Mr. Cruz-Sanchez's stay is reasonable because witnesses may have discussed what they saw after he left or after they realized he was not going to return. While it certainly is possible that some detainees housed in J-Pod Unit 106 never overlapped with Mr. Cruz-Sanchez, the Court finds that the potential for finding relevant information where Plaintiffs otherwise have little access to witnesses outweighs the burden on CoreCivic of producing the records. As to CoreCivic's third-party confidentiality concerns, the Court finds the reasoning with relation to RFP Nos. 143-144 equally applicable here. Therefore, the Court orders CoreCivic to produce documents responsive to RFP Nos. 148 and 149 pursuant to the terms of the protective order.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel documents responsive to RFP Nos. 143, 144, 148, and 149 is **GRANTED**. However, in order to protect the confidential information disclosed by the other detainees and the individuals with whom they spoke on the phone, the Court orders CoreCivic to produce the documents pursuant to the terms of the protective order (ECF No. 21) as follows:

1. CoreCivic shall produce call logs responsive to RFP Nos. 143 and 148 by **March 9, 2018**.
2. Plaintiffs shall then review these call logs and, on or before **March 16, 2018**, provide to CoreCivic a narrowed list of calls for which Plaintiffs seek discovery of

9

the recordings.

3. CoreCivic then is ordered to produce these recordings to Plaintiffs, subject to the terms of the protective order, by **March 28, 2018.**

**IT IS SO ORDERED.**

Dated: February 27, 2018

*[signature]*
Hon. Nita L. Stormes
United States Magistrate Judge