UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GERARDO CRUZ-SANCHEZ, by and through his successor-in-interest Paula Garcia Rivera, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No.: 17cv569 BEN (NLS)<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 2**<br><br>[ECF No. 67] |

Before the Court is a Joint Motion for Determination of Discovery Dispute No. 2, filed by Plaintiffs and Defendant CoreCivic, Inc. ("CoreCivic"), which addresses the parties' dispute regarding Plaintiffs' Requests for Production Nos. 174-179. ECF No. 67.

**I. BACKGROUND**

According to the allegations in Plaintiffs' Second Amended Complaint, the United States arrested Plaintiff Gerardo Cruz-Sanchez in early February 2016 as a material witness to the crime of alien-smuggling. ECF No. 41 ¶ 1. He was not charged with a crime, but because he could not afford bail, he was incarcerated in the Otay Mesa

Detention Center ("OMDC"), which is run by CoreCivic. *Id.* The complaint alleges that Mr. Cruz-Sanchez fell sick a few days after being admitted to OMDC. *Id.* ¶¶ 1, 14, 24. Despite repeated requests for medical attention, he was never seen by a doctor, only given Ibuprofen and an allergy medication, and sent back to his cell each time with no further tests performed. *Id.* ¶¶ 27-49. His condition quickly deteriorated to the point where he was coughing up blood, unable to talk or swallow food, and developed shortness of breath, respiratory distress, and wheezing. *Id.* ¶¶ 53, 55-58. Despite his condition and complaints by his cellmate, Defendant C.O. Landin and other staff failed to provide him with any medical attention. Finally on February 26, his cellmate brought him to the common area to eat and it was only after Mr. Cruz-Sanchez coughed up blood at a table that he was taken to CoreCivic's medical facility, seen by a doctor, and sent to Scripps Mercy Hospital in Chula Vista, California. *Id.* ¶¶ 72-78. He died three days later. *Id.* ¶ 80. Plaintiffs' complaint puts forth several causes of action including wrongful death, negligence, negligent training and supervision, and negligent infliction of emotional distress.

Relevant to the instant discovery dispute, on April 5, 2018, Plaintiffs deposed David McGinnis. ECF No. 67 at 3. Mr. McGinnis was the Learning and Development Manager at OMDC for 11 years, including the time during which Mr. Cruz-Sanchez was detained. *Id.* During this deposition, Mr. McGinnis testified that he believed there were understaffing issues at OMDC and that he had personally made written complaints regarding these issues. *Id.* at 4-5. The day after the deposition, Plaintiffs served Requests for Production Nos. 174-179, targeting the information revealed during the deposition. *Id.* at 7. Defendants objected to the requests on timeliness grounds, and the parties met and conferred the next business day. *Id.* Plaintiffs also served a third-party subpoena on Mr. McGinnis, seeking his copies of the same documents. *Id.* CoreCivic contacted Mr. McGinnis and instructed him not to produce any documents under that subpoena in light of the instant motion. *Id.*

//

## II. DISCUSSION

### a. Timeliness

As a threshold matter, Defendants object to Plaintiffs' RFPs 174-179 on timeliness grounds. ECF No. 67 at 8-14. Defendants argue that fact discovery would have to be reopened to allow for this discovery and Plaintiffs have not shown good cause to do so. Moreover, Defendants argue that Plaintiffs would need to amend their complaint to add a theory of understaffing in order for the information they are seeking to even be relevant, and the time for amendment has passed.

Defendants are correct that the RFPs are untimely as served. The Court's scheduling order states that fact discovery must be completed by the fact discovery cutoff date and "completed" means that the discovery "must be initiated a sufficient period of time in advance of the cut-off date, so that it may be completed by the cut-off date, taking into account the times for service, notice and response as set forth in the Federal Rules of Civil Procedure." ECF No. 28 at 2. Fact discovery closed on April 9, 2018 (ECF No. 53 at 2), so it is clear that the RFPs served on April 6, 2018 were not initiated in time, given the response period as set for in Rule 34(b)(2)(A).

Thus, Plaintiffs would have to establish good cause in order to permit the discovery. Under Rule 16(b), the scheduling order may be modified to permit this discovery only upon a showing of good cause. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). To determine if good cause exists, the court's primary focus is on the movant's diligence in seeking the amendment. *Id.* ("Good cause" exists if a party can demonstrate that the schedule "cannot reasonably be met despite the diligence of the party seeking the extension."). Courts may consider the following factors in evaluating diligence: "(1) that [the party] was diligent in assisting the Court in creating a workable Rule 16 order; (2) that [the party's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [the party] was diligent in

3

seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order." *Mondares v. Kaiser Found. Hosp.*, No. 10-CV-2676-BTM WVG, 2011 WL 5374613, at *2 (S.D. Cal. Nov. 7, 2011) (citation omitted).

Plaintiffs argue that they were diligent because as soon as the allegations of understaffing came to light in Mr. McGinnis's deposition, they immediately sought discovery from Defendants, engaged in meet and confers in an attempt to resolve the issue, and brought this motion soon thereafter when no resolution was reached. ECF No. 67 at 7. Defendants do not dispute this timeline, but instead argue that Plaintiffs were careless in pursuing discovery because they learned of Mr. McGinnis's identity and position at OMDC on November 14, 2017 and learned on January 18, 2018 via an interrogatory response that he may have documents related to training of CoreCivic staff, but failed to take his deposition and seek documents from him until early April. ECF No. 67 at 9-10.

Defendants' argument, while applicable to the issue of *training*, does not address why Plaintiffs should have known that Mr. McGinnis would have any information related to *understaffing*. The fact that Plaintiffs stated that they expected Mr. McGinnis to testify "as to the actual training received by CoreCivic employees, including Defendant Landin" at the time they noticed his deposition supports their position—that Plaintiffs were not aware of any understaffing concerns or that Mr. McGinnis would have any information on understaffing before his deposition. Thus, the Court finds that Plaintiffs have established good cause to extend fact discovery to cover the discovery requests for the issues related to Mr. McGinnis's allegations of understaffing.

Lastly, Defendants argue that Plaintiffs would need to amend their complaint to add specific allegations of understaffing because it is a separate issue from inadequate training and the deadline to amend pleadings has long passed. ECF No. 10-11. Plaintiffs' complaint includes separate causes of action for (1) negligence against the various Defendants (claims 2 and 6), and (2) negligent training and supervision against the various Defendants (claims 3 and 8). ECF No. 41. The allegations under negligence

4

accuse Defendants of failing to provide reasonable care for the medical needs of detainees, including that they failed to "treat[], manage[], supervise[]" Mr. Cruz-Sanchez's health condition. Furthermore, the allegations for inadequate training include allegations of inadequate supervision. Defendants do not explain why understaffing issues would not be covered under these allegations, and the Court does not see any reason why they would not and why amendment of the complaint would be necessary.

Accordingly, the Court will permit the requested discovery related to understaffing concerns, in accordance with the relevance limitations as set forth below.

### b. Specific Requests for Production

Federal Rule of Civil Procedure 34 allows a party to request that another party "permit the requesting party or its representative to inspect, copy, test, or sample [documents] in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). If the producing party objects in whole or in part to the request, it must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

The scope of information discoverable under Rule 34 is governed by Rule 26, which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.*

#### 1. Request Nos. 174, 175, and 176

Request No. 174 asks for:

> Produce all documents that David McGinnis provided to CoreCivic employees in San Diego relating to his claims that the Otay Mesa Detention Facility was understaffed. This request should include but not be limited to the "ethics complaints" that Dr. McGinnis described

5

17cv569 BEN (NLS)

in his deposition testimony on April 5, 2018.

Request No. 175 asks for:

> Produce all documents that David McGinnis provided to CoreCivic's national or corporate offices relating to his claims that the Otay Mesa Detention Facility was understaffed. This request should include but not be limited to the "ethics complaints" that Dr. McGinnis described in his deposition testimony on April 5, 2018.

Request No. 176 asks for:

> Produce all documents that David McGinnis provided via any CoreCivic "ethics hotline," or similar system (including by email or online portal) relating to his claims that the Otay Mesa Detention Facility was understaffed. This request should include but not be limited to the "ethics complaints" that Dr. McGinnis described in his deposition testimony on April 5, 2018.

Each of these requests seeks written documents whereby Mr. McGinnis made complaints to CoreCivic regarding understaffing issues at OMDC. Defendants object that Mr. McGinnis does not have any specific knowledge about whether the facility would have been understaffed during the time period Mr. Cruz-Sanchez was detained because Mr. McGinnis was on medical leave from January 27 to April 26. Mr. Cruz-Sanchez was admitted to the facility on February 10 and left the facility when he was finally sent to the hospital on February 26.

The Court finds that these requests target information that is relevant to at least Plaintiffs' claims of negligence. While Mr. McGinnis was on leave during the exact period that Mr. Cruz-Sanchez was detained, his long employment with OMDC and his presence at the facility two weeks prior to when Mr. Cruz-Sanchez entered provides sufficient basis for Plaintiffs to request discovery into this subject matter. In order to balance this with the proportionality requirements of Rule 26, the Court will narrow these requests and impose a temporal limitation.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the motion to compel as to Requests Nos. 174, 175 and 176. CoreCivic shall produce written

complaints (including any supporting documents) submitted by Mr. McGinnis during the period of six months before the date Mr. Cruz-Sanchez was admitted (i.e., August 10, 2015 to February 10, 2016) to CoreCivic employees in San Diego, CoreCivic's national or corporate offices, or any CoreCivic "ethics hotline," or similar system (including by email or online portal), relating to his claims that the Otay Mesa Detention Facility was understaffed, and CoreCivic's responses to these written complaints, if any.

### 2. Request No. 177

Request No. 177 asks for:

> Produce all documents that David McGinnis provided to any CoreCivic employee or entity (as described in RFP's 174-176 above) relating to his claims that he was retaliated against for reporting understaffing issues at CoreCivic. This request should include but not be limited to the "ethics complaints" that Mr. McGinnis described in his deposition testimony on April 5, 2018.

This RFP targets documents specifically related to possible retaliation against Mr. McGinnis. One of Defendants' concerns with this discovery is that Mr. McGinnis may be a disgruntled employee who has issues with CoreCivic separate from the incident at issue in this case with Mr. Cruz-Sanchez. ECF No. 67 at 13. The Court finds that this RFP seeks information too far removed from the incident relating to Mr. Cruz-Sanchez and **DENIES** the motion to compel as to Request No. 177.

### 3. Request No. 178

Request No. 178 asks for:

> Produce all documents that David McGinnis provided to any CoreCivic employee or entity (as described in RFP's 174-176 above) relating to his claims that CoreCivic did not prioritize training of its employees.

This RFP targets documents related to whether training was prioritized by CoreCivic and does not relate to allegations of understaffing. Allegations of inadequate training was part of the first complaint filed by Plaintiffs and Plaintiffs knew months ago that Mr. McGinnis was the Learning and Development Manager at CoreCivic. Thus, the Court

finds that there is no good cause to permit this request at this late hour. The Court **DENIES** the motion to compel as to Request No. 178.

### 4. Request No. 179

Request No. 179 asks for:

> Produce all documents in CoreCivic's possession that either support or refute Mr. McGinnis's claims regarding CoreCivic's understaffing, retaliation, and training deficiencies, as described above, and as described in his deposition testimony on April 5, 2018. This request should include, but not be limited to, documents that CoreCivic believes impeach Mr. McGinnis's claims substantively, or his credibility generally.

This request, as written, is too broad. First, the request targets documents related not only to understaffing, but also training deficiencies and retaliation. For the reasons stated above, the Court **DENIES** this request for any document related to training or retaliation.

As to understaffing, the Court will **GRANT IN PART AND DENY IN PART** this request. The request for "all documents" that "support or refute" Mr. McGinnis's claims of understaffing is still too broad and not proportional to the needs of the case. However, information about staffing, including staffing numbers and a description of the types of personnel present,[1] in the areas where Mr. Cruz-Sanchez may have been witnessed in his condition and the medical facility, are relevant to the allegations of understaffing. The Court will order CoreCivic to produce documents sufficient to show how the J-Pod open-bay dorm rooms (including room 106 where Mr. Cruz-Sanchez was housed) and the medical facility were staffed during the period spanning from November 11, 2015 to February 29, 2016.

### c. Subpoena to Mr. McGinnis

The last issue the parties bring in their motion is whether the third-party subpoena that Plaintiffs issued directly to Mr. McGinnis will be permitted. ECF No. 67 at 3. After

---

[1] For example, whether the staff count consisted of correctional officers, nurses, physician's assistants, doctors, or similar information.

8

1  Plaintiffs sent the requests above to Defendants and Defendants objected to them,
2  Plaintiffs also subpoenaed Mr. McGinnis, attaching the same requests. ECF No. 67 at 7.
3  CoreCivic contacted Mr. McGinnis and instructed him not to respond because it intended
4  to quash the subpoena. *Id.*

5  A court must modify or quash a subpoena that subjects a person to undue burden.
6  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). In evaluating whether a subpoena is unduly
7  burdensome, "the court balances the burden imposed on the party subject to the subpoena
8  by the discovery request, the relevance of the information sought to the claims or
9  defenses at issue, the breadth of the discovery request, and the litigant's need for the
10 information." *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13CV1395-GPC BLM, 2014
11 WL 3573400, at *2 (S.D. Cal. July 18, 2014) (citation omitted).

12 As a preliminary matter, the Court notes that Mr. McGinnis has not moved to
13 quash the subpoena. However, a party may challenge a subpoena issued to a third-party
14 if that party has a "personal right or privilege relating to the information sought." Since
15 documents sought from Mr. McGinnis could contain information regarding staffing at
16 CoreCivic's facility and other such information gained by Mr. McGinnis through his
17 employment with CoreCivic, the Court will consider Defendants' motion to quash the
18 subpoena to Mr. McGinnis.

19 The Court has already ruled above that certain documents responsive to the
20 requests for production are relevant, and has narrowed the scope of the requests to be
21 proportional to the needs of the case. Defendants have not put forth any argument as to
22 the burden imposed on Mr. McGinnis, as he would be the party producing the documents.
23 Defendants argue that the information Mr. McGinnis has may contain CoreCivic's
24 confidential or privileged information. The Court fails to see what privileged information
25 would be in Mr. McGinnis's possession, responsive to the request for his written
26 complaint regarding understaffing. And to the extent such documents would have
27 confidential information, these documents are to be produced under the Protective Order
28 already entered in this case. *See* ECF No. 21.

Thus, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' request to quash the subpoena to Mr. McGinnis. The motion to quash as to RFPs 174, 175, and 176 is denied in part, subject to the following limitations: Mr. McGinnis shall produce written complaints (including any supporting documents) that he submitted during the period of six months before the date Mr. Cruz-Sanchez was admitted (i.e., August 10, 2015 to February 10, 2016) to CoreCivic employees in San Diego, CoreCivic's national or corporate offices, or any CoreCivic "ethics hotline," or similar system (including by email or online portal), relating to his claims that the Otay Mesa Detention Facility was understaffed, and CoreCivic's responses to these written complaints, if any, in his possession. The motion to quash as to RFPs 177, 178, and 179 is granted.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel documents responsive to RFP Nos. 175-179 is **GRANTED IN PART AND DENIED IN PART**, as set forth above. Defendant CoreCivic and Mr. McGinnis shall produce the documents ordered above within **30 days** of the date of this order. Fact discovery is extended only for this limited purpose. All other dates and deadlines shall remain as previously set.

Dated: May 14, 2018

Hon. Nita L. Stormes
United States Magistrate Judge