UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GERARDO CRUZ-SANCHEZ, by and through his successor-in-interest Paula Garcia Rivera, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No.: 17-cv-569-AJB-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 107) |

Presently before the Court is Defendants' amended motion for summary judgment. (Doc. No. 107.) Plaintiff filed a response to Defendants' motion. (Doc. No. 108.) On December 20, 2018, the Court held a hearing on the instant motion. Based on the arguments presented in the briefing as well as at the hearing, the Court **GRANTS** in part and **DENIES** in part Defendants' amended motion for summary judgment.

## **BACKGROUND**

The instant matter revolves around the arrest, incarceration and eventual death of Gerardo Cruz-Sanchez. (*See generally* Doc. No. 83.) Mr. Cruz-Sanchez was incarcerated at the Otay Mesa Detention Center ("OMDC"). (*Id.* ¶ 1.) CoreCivic contracts with the United States to provide detention services at OMDC. (Doc. No. 107-1 at 6.) CoreCivic

provides support to facilitate the delivery of healthcare services. (*Id.* at 8.) CoreCivic has a "sick call" process where between 5:00 a.m. and 6:00 a.m. every morning, if a detainee wishes to be seen they sign the "Sick Call Request Log." (*Id.*) If a detainee has trouble reading or writing, an officer can assist. (*Id.*) Healthcare staff is also available seven days a week, twenty-four hours a day in the event of an emergency. (*Id.*)

On February 4, 2016, Mr. Cruz-Sanchez was assigned to the J-Pod at OMDC. (Doc. No. 108 at 11.) On February 11, 2016, Mr. Cruz-Sanchez had an intake assessment and reported no medical problems. (*Id.* at 12.) On February 12, 2016, Mr. Cruz-Sanchez was seen regarding pain in his upper eye lid. (*Id.*) On February 14, 2016, Mr. Cruz-Sanchez was seen by a nurse regarding a headache, sore throat, cough and nasal congestion for two days. (*Id.*) No chest x-ray was ordered nor did the nurse refer him to a licensed physician for further examination. (*Id.*) On February 16, 2016, Mr. Cruz-Sanchez saw another nurse complaining that he had a cough, body aches, and sore throat for one week. (*Id.*) He reported his pain level as a 9 out of 10. (*Id.*) Again neither a chest x-ray was ordered nor was Mr. Cruz-Sanchez referred to a licensed physician. (*Id.*) On February 17, 2016, Mr. Cruz-Sanchez saw a physician's assistant regarding the same symptoms. (*Id.*) However, again a chest x-ray was not ordered nor was he referred to a licensed physician. (*Id.*) On February 26, 2016, an emergency call was made for Mr. Cruz-Sanchez. (*Id.* at 16.) The other detainees reported that Mr. Cruz-Sanchez was coughing up blood. (*Id.* at 17.) Mr. Cruz-Sanchez was then brought to the medical clinic and seen by a doctor. (*Id.*) The doctor then called 911 and Mr. Cruz-Sanchez was transported to the hospital. (*Id.*) On February 29, 2016, Mr. Cruz-Sanchez passed away from pneumonia. (*Id.* at 20.)

Based on Plaintiffs' allegations between February 21st and February 26th, Mr. Cruz-Sanchez began coughing up blood. (*Id.* at 14–16.) Alejandro Chavez, Mr. Cruz-Sanchez's cellmate, pleaded with Officer Landin to give Mr. Cruz-Sanchez medical care. (*Id.*) Landin responded to Mr. Chavez's pleas by accusing Mr. Cruz-Sanchez and Mr. Chavez of being homosexual and stating they there would be no help unless Mr. Cruz-Sanchez was dying. (*Id.* at 15.) On February 26, 2016, Plaintiffs allege that Mr. Cruz-Sanchez could not get out

of bed and that his sheets were soaked in blood. (*Id.* at 17.) Mr. Chavez helped Mr. Cruz-Sanchez sit on a table to clean his sheets. (*Id.*) Mr. Cruz-Sanchez continued to cough up blood onto the table. (*Id.* at 18.) Landin observed this scene and proceeded to get very angry that Mr. Cruz-Sanchez was getting the table dirty with blood. (*Id.* at 19.)

Ms. Rivera filed her complaint on March 22, 2017. (Doc. No. 1.) On May 3, 2017, Ms. Rivera filed an amended complaint. (Doc. No. 5.) Ms. Rivera was then granted leave to amend her complaint on October 4, 2017. (Doc. No. 40.) Ms. Rivera's second amended complaint was filed on October 5, 2017. (Doc. No. 41.) Shortly thereafter, the Government filed its motion to dismiss or motion for summary judgment. (Doc. No. 43.) On April 17, 2018, the Honorable Judge Roger T. Benitez recused himself from the instant case. (Doc. No. 65.) On July 2, 2018, this Court granted the United States' motion to dismiss. (Doc. No. 74.) On August 7, 2018, the Court granted leave to file third amended complaint. (Doc. No. 83.) On August 7, 2018, Plaintiffs filed their third amended complaint ("TAC"). (Doc. No. 83.) Defendants United States, Landin, and CoreCivic answered the TAC on August 21, 2018. (Doc. Nos. 84, 85.) On September 14, 2018, Defendants Landin and CoreCivic filed the instant motion. (Doc. No. 107.)

## **LEGAL STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the

nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Celotex Corp.*, 477 U.S. at 330. When ruling on a summary judgment motion, a court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## **DISCUSSION**

Defendants seek summary judgment on all claims that Plaintiffs have sought in their TAC.

### A. Bane Act Claim Standing

Defendants argue that Plaintiffs do not have standing to assert a Bane Act Claim. The Bane Act allows a person to bring a cause of action "'in his or her own name and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion, with the exercise or enjoyment' of any constitutional or statutory right." *Bersaz v. Cty. of Santa Clara*, No. 14-cv-03868-LHK, 2015 WL 1230316, at *8 (N.D. Cal. Mar. 17, 2015) (quoting Cal. Civ. Code § 52.1). "[A] cause of action under the Bane Act survives the death of the victim/plaintiff pursuant to California Code of Civil Procedure § 377.20 and passes to the victim's/plaintiff's successor in interest pursuant to Cal. Civ. Code Proc. § 377.30." *Mathews v. Cty. of Oakland Police Dep't*, No. 12-cv-03235-JCS, 2013 U.S. Dist. LEXIS 162502, at *64–65 (N.D. Cal. Nov. 14, 2013); *see Dela Torre v. Cty. of Slainas*, No. C-09-00626 RMW, 2010 WL 3743762, at *6 (N.D. Cal. Sept. 17, 2010); *Medrano v. Kern Cty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1015–16 (E.D. Cal. 2013). Therefore, the Estate of Gerardo Cruz-Sanchez has standing to bring a Bane Act Claim. However, Ms. Riveria does not have standing to bring a Bane Act Claim on her own behalf. Further, Plaintiffs clarified at the hearing that Ms. Riveria is not seeking a Bane Act Claim on her own behalf.

B. Bane Act Claim Proof

Defendants asserts that Plaintiffs' Bane Act claim fails because the TAC fails to allege any underlying constitutional violation. Defendants rely upon *Campbell v. Feld Entertainment, Inc.*, 75 F. Supp. 3d 1193, 1212 (N.D. Cal. 2014), for this proposition. However, the court in *Campell* held that Plaintiff did not cite any statutory or constitutional provision nor any authority that a Bane Act claim could be based upon the right to use public streets. *Id.* Here, Plaintiffs have provided case law that the right to medical care has been the basis of a Bane Act claim. *See Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018). Plaintiffs also allege a Bane Act claim on the basis of the Eighth Amendment as well as the violation of the California Constitution.

Defendants contend that Plaintiffs' Bane Act claim further fails because Plaintiffs fail to allege that Mr. Cruz-Sanchez was deprived of federal or state constitutional rights through "threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion." (Doc. No. 107-1 at 13 (citing *Herrera v. AllianceOne Receivable Mgmt. Inc.*, 170 F. Supp. 3d 1282, 1287 (S.D. Cal. 2016) (quoting Cal. Civ. Code § 52.1(a))).)

Plaintiffs argue that where a prisoner "alleges deliberate indifference to serious medical [does] not need [to] allege threats, coercion, and intimidation independent of that deliberate indifference to state a Bane Act claim." *Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018) (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 802 n. 31 (2017).

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation and internal quotation marks omitted). The essence of a Bane Act claim is that the defendant, by improper means, "tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007). Courts have generally required that

5

the Bane Act show coercion "independent from the coercion inherent in [the constitutional violation] itself." *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012). Further, the Bane Act authorizes individual civil actions for damages and injunctive relief. *See* Cal. Civ. Code § 52.1(a).

The Court notes that "[t]he Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion has been the source of much debate and confusion." *Cornell*, 17 Cal. App. 5th at 801 (citation and internal quotation marks omitted); *see also K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) ("Courts deciding whether the 'threat, intimidation or coercion' must be distinct from the alleged underlying constitutional or statutory violation have come out all over the map."). *Compare Page v. Cty. of Madera*, No. 1:17-CV-00849-DAD-EPG, 2017 WL 5998227, at *4 (E.D. Cal. Dec. 4, 2017) ("Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials knowingly deprived them of a constitutional right or protection though acts that are inherently coercive and threatening, such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations.") (internal quotation marks omitted), *with Razon v. Cty. of Santa Clara*, No. 17-CV-00869-LHK, 2018 WL 405010, at *7 (N.D. Cal. Jan. 12, 2018) ("[A] plaintiff alleging deliberate indifference to serious medical needs must also allege coercion separate from the coercion inherent in that deliberate indifference in order to state a Bane Act claim.") (citation and internal quotation marks omitted).

The *Cornell* court explicitly sought to clear up the confusion among district courts over whether Bane Act claims require a separate allegation of coercion apart from the underlying violation. 17 Cal. App. 5th at 801. At issue in *Cornell* was a Bane Act claim arising from a wrongful arrest, which defendants claimed on appeal was insufficient for lack of having included a separately coercive act apart from the arrest itself. *Id.* at 795. Ultimately, the court disagreed with the principal that coercion must be independent from the constitutional violation. *Id.* at 795–800.

First, the court examined the precedent in *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947 (2012), and explained that "*Shoyoye's* discussion of coercion 'independent from the coercion inherent in the wrongful detention itself' was aimed at separating tort liability from statutory liability in the specific context of a jail over detention following a lawful arrest[.]" *Cornell*, 17 Cal. App. 5th at 799. The court then "acknowledge[d] that some courts have read *Shoyoye* as having announced 'independen[ce] from inherent coercion' as a requisite element of all section 52.1 claims alleging search-and-seizure violations," but concluded that "those courts misread the statute[.]" *Id.*

The court then examined the statute and stated that the statute targets interference with rights, making no distinction whether the coercion is inherent in the underlying act or not—"[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Id.* at 800. Ultimately, the *Cornell* court concluded that:

> Properly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no reason that, in addition, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded—and proved—unlawful arrest.

*Id.*

In the present action, the Court finds the principles of *Cornell* and its analysis of *Shoyoye* applies to all Bane Act claims. *See Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1083 (E.D. Cal. 2018); *see also Craig v. Cty. of Santa Clara*, No. 17-CV-02115-LHK, 2018 WL 3777363, at *19 (N.D. Cal. Aug. 9, 2018) (highlighting that the Ninth Circuit "recently adopted a position on this issue that binds this Court" that "[n]othing in the text of the [Bane Act] requires that the offending threat, intimidation or coercion be independent from the constitutional violation alleged.") (citation and internal quotation marks omitted).

Here, Plaintiffs do not need to allege coercion separate from the coercion inherent in that deliberate indifference in order to state a Bane Act claim. Further, Plaintiffs are correct that whether Landin made comments that created threats, intimidation, or coercion is an issue of material fact. There are competing material facts on both sides of this case as to whether Landin made the alleged comments that created threats, intimidation, or coercion. Specifically, it is disputed between the parties whether Landin made comments such as asking Mr. Chavez if Mr. Cruz-Sanchez was his wife, calling Mr. Cruz-Sanchez a chicken, and stating that medical was not going to help Mr. Cruz-Sanchez unless he was dying. It is a question for the jury to decide whether these statements are true and whether these statements would amount to creating threats, intimidation or coercion.

Accordingly, this issue is not appropriate for summary judgment. Further, Defendants argue that Mr. Chavez's testimony is not credible because he is being paid for his testimony. (Doc. No. 107-1 at 16 n. 5.) However, credibility is an issue for a jury and should not be addressed in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986).

### C. Duty to Provide Healthcare to Detainees

Defendants argue that they do not have a duty to provide healthcare to detainees. (Doc. No. 107-1 at 14–16.) Defendant specifically alleges "[n]othing in the CSDS requires CoreCivic or Landin to evaluate the health of detainees, determine the proper course of treatment, or provide care to a detainee." (*Id.* at 15.) However, the Court agrees with Plaintiffs' argument that Defendants state they properly trained Landin what to do in a medical emergency and that they fulfilled their duty to give Mr. Cruz-Sanchez access to the medical care, which directly contradicts their argument that Defendants did not have a duty to provide healthcare. (Doc. No. 108 at 26.) Further, the contract between CoreCivic and the United States expressly provides that CoreCivic must provide all necessary support to facilitate the delivery of health services. (Doc. No. 107-2 at 25.) Accordingly, Defendants did have a duty to provide healthcare to detainees.

///

### D. Breach of Duty to Provide Healthcare to Detainees

Defendants allege that Defendants did not breach the duty to provide healthcare to detainees. (Doc. No. 107-1 at 16.) Plaintiffs allege that Mr. Chavez asked Landin to help Mr. Cruz-Sanchez seek medical treatment. (Doc. No. 108 at 27-28.) In response, Mr. Chavez alleges that Landin asked if Mr. Cruz-Sanchez and Mr. Chavez were homosexual and if Mr. Chavez is Mr. Cruz-Sanchez's wife. (*Id.* at 20.) Defendants argue that the recordkeeping of OMDC proves that Landin was not on duty the days that the comments were alleged to have occurred. (Doc. No. 107-1 at 16.) However, Mr. Chavez testified that he tried talking to Landin sometime between February 22nd and the 26th. (*Id.* at Ex. 7.) Landin was working according to the record on February 26, 2016 and may have possibility interacted with Mr. Chavez. Therefore, this does create a dispute of material fact.

Here, again there are material facts in dispute. Defendants argue that there was no coercion to not seek medical treatment. However, Plaintiffs allege that Landin did in fact make several comments including that medical was not going to help Mr. Cruz-Sanchez. It is a question for the jury to determine the credibility of the witnesses and to make a factual determination as to what actually occurred at OMDC and whether those actions were in fact a breach of duty to provide healthcare to detainees. Accordingly, summary judgment is inappropriate as to whether Defendants breached a duty to provide healthcare to detainees.

### E. Proper Training of Landin

First, Defendants contend that Landin cannot supervise or train himself, therefore summary judgment should be granted in Landin's favor. (Doc. No. 107-1 at 19.) Further, Plaintiffs have not alleged that Landin was in charge of training. The Court agrees with Defendants' arguments. Accordingly, the Court grants Defendants' summary judgment in regard to the proper training allegation against Landin.

Second, Defendants allege that Plaintiffs have not properly alleged a negligent training claim against CoreCivic. (Doc. No. 107-1 at 19.) A plaintiff alleging negligent training under California law must show that the employer negligently trained the

employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009) (citing *State Farm Fire & Casualty Co. v. Keenan*, 171 Cal. App. 3d 1, 23 (1985)). "[T]here can be no liability for negligent supervision in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Inzerillo v. Green Tree Servicing*, *LLC*, No. 13-cv-06010-MEJ, 2014 WL 6660534, at *7 (N.D. Cal. Nov. 24, 2014) (quoting *Juarez v. Boy Scout of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000)). "[T]o establish negligent supervision, a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015).

Defendants argue that they provided the adequate training to Landin and that he followed his training in calling a medical emergency for Mr. Cruz-Sanchez on February 26, 2016. (Doc. No. 107-1 at 20.) Further, Defendants assert that Plaintiffs cannot establish proximate causation to connect the alleged deficiency in training to Mr. Cruz-Sanchez's death. (*Id.*) However, Landin testified that he did not remember receiving any training regarding medical training. (Doc. No. 108 at 9.) It is unclear if Landin was trained at all in how to respond to illness by allowing medical intervention and giving access to medical care. Thus, Plaintiffs have established a dispute of material facts in regard to whether Defendants provided adequate training to Landin. Accordingly, Court denies Defendants' motion for summary judgment in regard to the proper training allegation against CoreCivic.

F. Duty Owed by a Special Relationship Between Jailer and Jailee

Defendants argue that summary judgment should be granted in their favor for two reasons. (Doc. No. 107-1 at 22.) First, Defendants argue that they did not assume the United States' obligation to provide adequate medical treatment. (*Id.*) As discussed above, the Court finds that Defendants did have their own duty to provide adequate medical treatment.

Second, Defendants argue that nothing in the record establishes that "Defendants

10

17-cv-569-AJB-NLS

'den[ied], delay[ed], or interefere[d] with [the] medical treatment' of Cruz-Sanchez." (*Id.*) Defendants argue that Mr. Cruz-Sanchez was seen by medical personnel six times. (*Id.*) However, as discussed above, there is a dispute of material fact as to whether Defendants breached a duty owed to Mr. Cruz-Sanchez in regard to accessing medical care. Further, Plaintiffs argue that "[t]rue enough that PHS failed Cruz-Sanchez but it seems likely that PHS staff might have treated the man differently had they known about his advanced deterioration." (Doc. No. 108 at 29.) Accordingly, there is a dispute of material fact as to whether Defendants breached the duty owed by a special relationship between jailer and jailee. Thus, Court denies Defendants' motion for summary judgment on the basis of the duty owed by special relationship.

### G. Punitive Damages

Defendants argue that Plaintiffs have not established by clear and convincing evidence that they are entitled to punitive damages. A plaintiff must establish "malice, oppression or fraud by clear and convincing evidence," to prevail on a punitive damages claim. *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1121 (2001). Here, since there is a dispute as to the material facts regarding what exactly happened in the days that Mr. Cruz-Sanchez was sick, this issue should not be decided at the summary judgment stage. It is for the jury to decide if Plaintiffs are in fact telling the truth and whether punitive damages would be appropriate based on those facts.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment.

**IT IS SO ORDERED**.

Dated: September 17, 2019

Hon. Anthony J. Battaglia
United States District Judge