UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GERARDO CRUZ-SANCHEZ, by and through his successor-in-interest Paula Garcia Rivera, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No.: 17-cv-569-AJB-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED MOTION TO EXCLUDE EXPERT ROGER CLARK**<br><br>(Doc. No. 106) |

Presently before the Court is Defendants' amended motion to exclude expert Roger Clark. (Doc. No. 106.) Plaintiffs filed a response to Defendants' motion. (Doc. No. 111.) On December 20, 2018, the Court held a hearing on the instant motion. Based on the arguments presented in the briefing as well as at the hearing, the Court **GRANTS** in part and **DENIES** in part Defendants' amended motion to exclude expert Roger Clark.

## **BACKGROUND**

The instant matter revolves around the arrest, incarceration and eventual death of Gerardo Cruz-Sanchez. (*See generally* Doc. No. 83.) Mr. Cruz-Sanchez was incarcerated at the Otay Mesa Detention Center ("OMDC"). (*Id.* ¶ 1.) CoreCivic contracts with the United States to provide detention services at OMDC. (Doc. No. 107-1 at 6.) CoreCivic

provides support to facilitate the delivery of healthcare services. (*Id.* at 8.)

On February 11, 2016, Mr. Cruz-Sanchez had an intake assessment and reported no medical problems. (*Id.* at 12.) On February 12, 2016, Mr. Cruz-Sanchez was seen regarding pain in his upper eye lid. (*Id.*) On February 14, 2016, Mr. Cruz-Sanchez was seen by a nurse regarding a headache, sore throat, cough and nasal congestion for two days. (*Id.*) On February 16, 2016, Mr. Cruz-Sanchez saw another nurse complaining that he had a cough, body aches, and sore throat for one week. (*Id.*) On February 17, 2016, Mr. Cruz-Sanchez saw a physician's assistant regarding the same symptoms. (*Id.*) On February 26, 2016, an emergency call was made for Mr. Cruz-Sanchez. (*Id.* at 16.) Mr. Cruz-Sanchez was then brought to the medical clinic and seen by a doctor. (*Id.*) The doctor then called 911 and Mr. Cruz-Sanchez was transported to the hospital. (*Id.*) On February 29, 2016, Mr. Cruz-Sanchez passed away from pneumonia. (*Id.* at 20.)

Currently, Defendants seek to exclude Plaintiffs' expert witnesses, Roger Clark ("Clark"). (Doc. No. 106.) Plaintiffs designated Clark to opine on four areas: (1) failure to render aid; (2) improper cell checks; (3) failure to train and supervise correctional officers; and (4) improper continued classification in general population. (*Id.* at 3.)

## **LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* "The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007).

Prior to admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). The trial court acts as a "gatekeeper" by making a preliminary determination of whether the expert's proposed testimony is not only relevant but reliable. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). This two-step assessment requires consideration of whether (1) the reasoning or methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether the reasoning or methodology properly can be applied to the facts in issue (the relevance prong). *Daubert*, 509 U.S. at 592–93; *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998).

A district court has broad latitude in deciding how to measure reliability and in making the ultimate reliability determination. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). In essence, the Court must determine whether the expert's work product amounts to "good science." *Daubert*, 509 U.S. at 593. In *Daubert*, the Supreme Court outlined factors relevant to the reliability prong, including (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community. *Id.* at 593–94. As later confirmed in *Kumho Tire*, "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141–42.

Under the relevance or "fit" prong, the testimony must be "'relevant to the task at hand,' i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (quoting *Daubert*, 509 U.S. at 597). Relevance requires opinions that would assist the trier of fact

3

in reaching a conclusion necessary to the case. *See Kennedy*, 161 F.3d at 1230. In general, the *Daubert* analysis focuses on the principles and methodology underlying an expert's testimony, not on the expert's ultimate conclusions. *Daubert*, 509 U.S. at 595. However, the Supreme Court has cautioned that "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997). As such, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

## **DISCUSSION**

Defendants move to exclude Clark's opinions on the basis that: "(1) his report provides nothing more than a factual narrative; (2) he is not qualified to provide medical opinions; (3) his opinions rely on speculation and are *ipse dixit*; (4) his opinions are not reliable; (5) his opinions contain impermissible legal opinions and conclusions; and (6) his opinions are not relevant or helpful to a jury." (Doc. No. 106-1 at 5.)

### A. Improper Factual Narrative

Defendants argue that Clark's testimony simply rehashes otherwise admissible evidence that can be presented through percipient witnesses and documentary evidence. (Doc. No. 106-1 at 6–7.) Specifically, Defendants point to the fact that Clark's report contains an overview for seven pages of a fifteen-page report. (*Id.*) Defendants rely upon a case previously decided by this Court to establish that an expert report may be excluded on the basis that the report offers nothing more than factual narrative of these documents. (Doc. No. 106-1 at 7 (citing *Johns v. Bayer Corp.*, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013)).)

Unlike the expert report in *Johns*, where the report was merely facts, Clark offers opinions as well as facts in his report. While, Clark does provide a background section of his report, he also provides opinions regarding Defendants' alleged actions in this case. (Doc. No. 109 at 4.) Clark is not simply rehashing otherwise admissible evidence. Accordingly, Clark's opinion is not an improper factual narrative.

///

4

B. Opinion Regarding the Failure to Render Aid

Defendants argue that Clark's opinions regarding failure to render aid are legal conclusions. (Doc. No. 106-1 at 7.) "It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002). However, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Id.* Here, Clark's testimony is that the information suggests that there was a failure to render aid, this is not direct testimony that Clark has reached a legal conclusion that there is actually failure to render aid. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004) ("While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law).") The Court does not find that any of Clark's statements at issue in the briefing regarding failure to render aid are legal conclusions, except for the statement regarding coercive treatment that is explained in further detail below.

Clark must refrain from advocating for Plaintiffs. "Rule 706 does not contemplate that expert witnesses be appointed to serve as an advocate for a party." *Aguilar v. Bates*, No. 15-cv-2446-MMA-AGS, 2018 WL 4896024, at *2 (S.D. Cal. Oct. 9, 2018). Accordingly, Clark's language stating a "grievous failure," "serious departure," and "serious breach" are advocating for Plaintiff. (Doc. No. 106-2 at 10–11.) Therefore, Clark may opine that the facts support a finding that there was a failure to render necessary aid and a finding that there was a departure from the industry standards. However, Clark must refrain from language that will be deemed advocating for Plaintiffs.

Further, Defendants argue that Clark's opinions improperly vouch for Mr. Chavez's credibility. The jury must decide credibility, not an expert witness. *Godinez v. Huerta*, No. 16-cv-0236-BAS-NLS, 2018 WL 2018048, at *6 (S.D. Cal. May 1, 2018). Experts "are not permitted to testify . . . in such a manner as to improperly buttress a witness' credibility." *Id.* Specifically, Clark opines:

> According to the deposition testimony of Alejandro Chavez (which was corroborated by his contemporaneous recorded calls) CoreCivic staff not only failed to respond to specific requests for medical care, but actively dissuaded it.
>
> If one believes that Mr. Cruz-Sanchez stopped seeking medical care at some point during his incarceration that would have been an expected result of this coercive treatment by CoreCivic staff, and a violation of correctional standards in its own right.

(Doc. No. 106-2 at 11.) Clark should refrain from opining that Mr. Chavez's testimony was corroborated by his contemporaneous recorded calls. Determining credibility is a task suited for the jury. *See Godinez*, 2018 WL 2018048, at *6.

Defendants assert that the above statement regarding Mr. Cruz-Sanchez no longer seeking medical care should be excluded because it is sheer speculation and *ipse dixit*. (Doc. No. 106-1 at 10.) Clark's opinion here is not based on sheer speculation, but rather, is based on the facts that Clark was provided as well as his experience. *See Kumho Tire Co., Ltd.*, 526 U.S. at 156.

However, the above statement is a legal conclusion. Defendants argue that Clark's statement that this treatment is a "violation of correctional standards in its own right" is a legal conclusion. (Doc. No. 106-1 at 10.) The Court agrees with Defendants that Clark's entire statement regarding Mr. Cruz-Sanchez no longer seeking medical care is a legal conclusion. This statement is precluded in verbatim. However, as explained by the Court at the hearing, a *Daubert* hearing may be appropriate to establish foundation for his opinion.

### C. Opinion Regarding Cell Checks

Clark offers several opinions regarding improper cell checks. Defendants argue that several of his opinions are impermissible and should be excluded. First, Defendants argue that Clark's opinion that, "[a]nother well-recognized duty of correctional staff is to perform regular checks of inmate housing units and to watch for signs of medical distress. This duty

exists whether or not an inmate affirmatively articulates a medical issue," (Doc. No. 106-2 at 11), is an impermissible legal conclusion. (Doc. No. 106-1 at 11.) However, simply stating the industry standard is not a legal conclusion.

Next, Defendants assert that Clark's opinion that "[e]very reasonable officer knows and common-sense dictates that if an inmate is unable to eat or speak, cannot get out of bed, or is having difficulty breathing, medical care should be sought without delay," (Doc. No. 106-2 at 11), is impermissible because it is a matter of common sense. (Doc. No. 106-1 at 12.) The Court agrees that this is purely common sense and thus, is not helpful to the jury. Accordingly, this statement is impermissible opinion testimony.

Defendants further assert that Clark's opinions regarding the California Peace Officer Standards in Training and CoreCivic's Code of Ethics are improper since the jury can simply read these standards and determine whether or not Defendants have complied with these standards. (Doc. No. 106-1 at 12–13.) However, Clark is permitted to testify whether Defendants' conduct comported with the applicable standards. *See Godinez*, 2018 WL 2018048, at *6; *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005); *Cooke v. City of Stockton*, No. 14-cv-908-KJM-KJN, 2017 WL 6447999, at *5 (E.D. Cal. Dec. 18, 2017); *Molina v. City of Visalia*, No. 13-cv-1991-DAD-SAB, 2016 WL 8730723, at *6 (E.D. Cal. Sep. 16, 2016).

Clark further offers an opinion that: "it appears that CoreCivic's deficient staffing patterns may have contributed to the inadequate supervision of Mr. Cruz-Sanchez and others." (Doc. No. 106-2 at 12.) Defendants assert that there are three reasons why this opinion is impermissible: it is purely speculative, Clark is not qualified to offer an opinion on this matter, and this statement does not assist the trier of fact to understand the evidence or determine a fact at issue. (Doc. No. 106-1 at 13.) First, Clark is qualified to opine regarding staffing patterns. Clark has had experience in the administration of a custodial facility. Second, Clark's opinion is not purely speculative. Clark relied upon CoreCivic's documents and testimony of a former CoreCivic employee to establish his opinion. However, the Court finds that this testimony is lacking in relevance. Plaintiffs did not

7

allege an understaffing claim in their third amended complaint. Here, the unfair prejudice of allowing this evidence in at trial would outweigh the probative value. At the hearing, Plaintiffs argued that this testimony would be presented as evidence of negligence and that Clark has the foundation for this opinion. However, this was not laid out in the report. Accordingly, the Court finds this opinion impermissible.

### D. Opinion Regarding Failure to Train and Supervise Correctional Officers

Defendants assert that the following opinions regarding the failure to train and supervise correctional officers are unsupported legal conclusions:

> This case also demonstrates a serious lack of proper training of correctional officers.
>
> And even when records reflected that [Defendant Landin] received some training, it was woefully deficient.
>
> Thus, the evidence strongly suggests that insufficient training contributed to Mr. Cruz-Sanchez's death.
>
> Any reasonably trained officer would have recognized that Mr. Cruz-Sanchez was in medical distress, and that needed help.
>
> CoreCivic apparently did not provide adequate training, with tragic results.

(Doc. No. 106-2 at 13–15.) First, as explained above, Clark must refrain from advocating for the Plaintiffs. *See Aguilar*, 2018 WL 4896024, at *2. These statements resemble arguments that an advocate would make. These statements as they are currently drafted cross the threshold into advocacy, and therefore would be inadmissible. However, Clark may testify as to the industry standards and whether Defendants have complied with the standards.

### E. Opinion Regarding Improper Continued Classification in General Population

Defendants assert that Clark improperly opines that Cruz-Sanchez should not have remained in general population due to his worsening condition. (Doc. No. 106-1 at 15.) Specifically, Clark opines that "Mr. Cruz-Sanchez should have been transferred to a

housing assignment where he could have been more closely monitor by medical staff. The failure to do so led directly to his death." (Doc. No. 106-2 at 15.) The Court agrees that Clark is not qualified to give medical testimony. *See Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1196 (C.D. Cal. 2015); *Rascon v. Brookings*, No. CV-14-749-PHX-JJT, 2018 WL 2880442, at *3 (D. Ariz. Feb. 7, 2018); *Wisler v. City of Fresno*, No. CV F 06-1694 AWI SMS, 2008 WL 2880442, at *3 (E.D. Cal. July 22, 2008); *Ayala v. City of South San Francisco*, No. C 06-02061 WHA, 2007 WL 2070236, at *6 (N.D. Cal. July 13, 2007). Therefore, Clark is not permitted to testify that the failure to transfer directly led to Mr. Cruz-Sanchez's death. However, Clark may testify as to inmate-housing practices.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendants' amended motion to exclude Roger Clark.

**IT IS SO ORDERED**.

Dated: September 17, 2019

Hon. Anthony J. Battaglia
United States District Judge