UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GERARDO CRUZ-SANCHEZ, by and through his successor-in-interest Paula Garcia Rivera, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No.: 17-cv-569-AJB-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT DR. TODD WILCOX**<br><br>(Doc. No. 88) |

Presently before the Court is Defendants' motion to exclude expert Dr. Todd Wilcox. (Doc. No. 88.) Plaintiff filed a response to Defendants' motion. (Doc. No. 110.) On December 20, 2018, the Court held a hearing on the instant motion. Based on the arguments presented in the briefing as well as at the hearing, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to exclude expert Dr. Todd Wilcox.

## **BACKGROUND**

The instant matter revolves around the arrest, incarceration and eventual death of Gerardo Cruz-Sanchez. (*See generally* Doc. No. 83.) Mr. Cruz-Sanchez was incarcerated at the Otay Mesa Detention Center ("OMDC"). (*Id.* ¶ 1.) CoreCivic contracts with the United States to provide detention services at OMDC. (Doc. No. 107-1 at 6.) CoreCivic

1

17-cv-569-AJB-NLS

provides support to facilitate the delivery of healthcare services. (*Id.* at 8.)

On February 11, 2016, Mr. Cruz-Sanchez had an intake assessment and reported no medical problems. (*Id.* at 12.) On February 12, 2016, Mr. Cruz-Sanchez was seen regarding pain in his upper eye lid. (*Id.*) On February 14, 2016, Mr. Cruz-Sanchez was seen by a nurse regarding a headache, sore throat, cough and nasal congestion for two days. (*Id.*) On February 16, 2016, Mr. Cruz-Sanchez saw another nurse complaining that he had a cough, body aches, and sore throat for one week. (*Id.*) On February 17, 2016, Mr. Cruz-Sanchez saw a physician's assistant regarding the same symptoms. (*Id.*) On February 26, 2016, an emergency call was made for Mr. Cruz-Sanchez. (*Id.* at 16.) Mr. Cruz-Sanchez was then brought to the medical clinic and seen by a doctor. (*Id.*) The doctor then called 911 and Mr. Cruz-Sanchez was transported to the hospital. (*Id.*) On February 29, 2016, Mr. Cruz-Sanchez passed away from pneumonia. (*Id.* at 20.)

Currently, Defendants seek to exclude Plaintiffs' expert witnesses, Dr. Todd Wilcox ("Dr. Wilcox"). (Doc. No. 88.) Plaintiffs designated Dr. Wilcox to opine on correctional medicine.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* "The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007).

Prior to admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). The trial court acts as a "gatekeeper" by making a preliminary determination of whether the expert's proposed testimony is not only relevant but reliable. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). This two-step assessment requires consideration of whether (1) the reasoning or methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether the reasoning or methodology properly can be applied to the facts in issue (the relevance prong). *Daubert*, 509 U.S. at 592–93; *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998).

A district court has broad latitude in deciding how to measure reliability and in making the ultimate reliability determination. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). In essence, the Court must determine whether the expert's work product amounts to "good science." *Daubert*, 509 U.S. at 593. In *Daubert*, the Supreme Court outlined factors relevant to the reliability prong, including (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community. *Id.* at 593–94. As later confirmed in *Kumho Tire*, "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141–42.

Under the relevance or "fit" prong, the testimony must be "'relevant to the task at hand,' i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (quoting *Daubert*, 509 U.S. at 597). Relevance requires opinions that would assist the trier of fact in reaching a conclusion necessary to the case. *See Kennedy*, 161 F.3d at 1230. In general,

the Daubert analysis focuses on the principles and methodology underlying an expert's testimony, not on the expert's ultimate conclusions. *Daubert*, 509 U.S. at 595. However, the Supreme Court has cautioned that "conclusions and methodology are not entirely distinct from one another." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997). As such, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

## **DISCUSSION**

Defendants argue that two of Dr. Wilcox's opinions should be excluded. Specifically, Defendants seek to exclude the following opinions:

> 7. Given how poorly [Cruz-Sanchez] was oxygenating his blood, he would have appeared gravely ill even to a lay person. He was noticeably ill to his cellmate and his attorney who both tried to get him medical attention.
>
> 9. In the documentation in this case, there is significant collateral information to suggest that access to care in this facility is significantly constrained. There is evidence that the institution was struggling with officer staffing issues, that the doctor call process was onerous for patients to comply with, and that the officers did not advocate for the health needs of the prisoners even when they requested medical care directly.

(Doc. No. 88-1 at 2.)

Defendants argue that stating that Cruz-Sanchez would have appeared "gravely ill" to a lay person is unsupported speculation and requires too great an analytical gap between the data and the opinion. (*Id.* at 2–3.) Plaintiff asserts, and the Court agrees, that this opinion is based on Dr. Wilcox's review of testimony, the relevant medical records, and his years of experience as a licensed and practicing physician. Dr. Wilcox may offer his opinion that "Given how poorly [Cruz-Sanchez] was oxygenating his blood, he would have appeared gravely ill even to a lay person." (Doc. No. 88-1 at 2.) This opinion does not rise to the level of too great an analytical gap between the data and the opinion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). As Plaintiffs have correctly argued, Defendants are welcome to address any alleged analytical deficiencies in Dr. Wilcox's

4

testimony through cross-examination, their presentation of evidence, and through the opinions of their own expert.

However, the Court finds that the second half of that same paragraph that states: "He was noticeably ill to his cellmate and his attorney who both tried to get him medical attention" is too speculative. (Doc. No. 88-1 at 2.) Accordingly, Dr. Wilcox may not testify as to this finding.

Defendants argue further that Dr. Wilcox's opinion that there "is significant collateral information to suggest that access to care in this facility is significantly constrained" is an impermissible legal conclusion. (Doc. No. 88-1 at 4.) "It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002). However, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Id.* Here, Dr. Wilcox's testimony is that the information suggests that access to care is significantly constrained, this is not direct testimony that Dr. Wilcox has reached a legal conclusion that there is actually constrained access to care. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004) ("While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law).") Accordingly, Dr. Wilcox may testify to this specific opinion.

Defendants argue that Dr. Wilcox's opinion that "there is evidence that the institution was struggling with officer staffing issues, that the doctor call processes was onerous for patients to comply with, and that the officers did not advocate for the health needs of the prisoners even when they requested medical care directly" should be excluded. (Doc. No. 88-1 at 4.) The Court agrees with Defendants' argument that Dr. Wilcox is not an expert on staffing patterns in detention facilities. While Dr. Wilcox is an expert "in the design, administration, and delivery of correctional healthcare in various environments," (Doc. No. 110 at 10), this does not mean he is an expert in staffing a correctional facility.

(*See* Doc. No. 88-1 at 4.) Therefore, Dr. Wilcox's testimony regarding staffing issues will not be permitted.

## **CONCLUSION**

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to exclude expert Dr. Todd Wilcox.

**IT IS SO ORDERED**.

Dated: September 17, 2019

Hon. Anthony J. Battaglia
United States District Judge