UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GERARDO CRUZ-SANCHEZ, by and through his successor-in-interest Paula Garcia Rivera, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No.: 17-cv-569-AJB-NLS<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RESTRAINING ORDER**<br><br>(Doc. No. 123) |

Presently before the Court is Defendants' motion for restraining order. (Doc. No. 123.) On December 17, 2018, Plaintiff filed a response to Defendants' motion. (Doc. No. 125.) On December 20, 2018, the Court held a hearing on the instant motion. Based on the arguments presented in the briefing as well as at the hearing, the Court **DENIES** Defendants' motion for restraining order.

## **BACKGROUND**

The instant matter revolves around the arrest, incarceration and eventual death of Gerardo Cruz-Sanchez. (*See generally* Doc. No. 83.) Mr. Cruz-Sanchez was incarcerated at the Otay Mesa Detention Center ("OMDC"). (*Id.* ¶ 1.) CoreCivic contracts with the United States to provide detention services at OMDC. (Doc. No. 107-1 at 6.) CoreCivic

provides support to facilitate the delivery of healthcare services. (*Id.* at 8.)

On February 11, 2016, Mr. Cruz-Sanchez had an intake assessment and reported no medical problems. (*Id.* at 12.) On February 12, 2016, Mr. Cruz-Sanchez was seen regarding pain in his upper eye lid. (*Id.*) On February 14, 2016, Mr. Cruz-Sanchez was seen by a nurse regarding a headache, sore throat, cough and nasal congestion for two days. (*Id.*) On February 16, 2016, Mr. Cruz-Sanchez saw another nurse complaining that he has had a cough, body aches, and sore throat for one week. (*Id.*) On February 17, 2016, Mr. Cruz-Sanchez saw a physician's assistant regarding the same symptoms. (*Id.*) On February 26, 2016, an emergency call was made for Mr. Cruz-Sanchez. (*Id.* at 16.) Mr. Cruz-Sanchez was then brought to the medical clinic and seen by a doctor. (*Id.*) The doctor then called 911 and Mr. Cruz-Sanchez was transported to the hospital. (*Id.*) On February 29, 2016, Mr. Cruz-Sanchez passed away from pneumonia. (*Id.* at 20.)

On March 23, 2017, the San Diego Tribune ran an article regarding the instant litigation. (Doc. No. 123 at 2.) On December 13, 2018, ABC News published a web article with an accompanying Nightline television piece. (*Id.*) The Nightline piece contains an on-camera interview of Plaintiffs' counsel and Mr. Cruz-Sanchez's wife. (*Id.*) Plaintiffs' counsel also provided ABC News with audio of call recordings from Mr. Chavez-Lopez and video of Mr. Chavez-Lopez's deposition testimony. (*Id.*)

Defendants seek an order restraining all parties and counsel from making or providing extrajudicial statements, comments or communications about the subject matter of this lawsuit directly or indirectly to the media. (Doc. No. 123 at 1.)

## **LEGAL STANDARD**

A temporary restraining order ("TRO") may be granted upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order, as a form of preliminary injunctive relief, is to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415

2

17-cv-569-AJB-NLS

U.S. 423, 439 (1974). A request for a TRO is evaluated by the same factors that generally apply to a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). However, a TRO is an "extraordinary remedy" and is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). Instead, the moving party bears the burden of demonstrating four factors: (1) "he is likely to succeed on the merits;" (2) "he is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Although a plaintiff must satisfy all four of the requirements set forth in *Winter*, the Ninth Circuit employs a sliding scale whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Accordingly, if the moving party can demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a TRO may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Id.*

## DISCUSSION

Defendants assert that Plaintiffs' counsel's pattern of behavior suggests that they will continue to use the media to interfere with Defendants' right to a fair trial. (Doc. No. 123 at 5.) Defendants also contend that Counsel has a fiduciary responsibility to avoid obstructing the fair administration of justice. (*Id.* at 6.) Specifically, Defendants contend that some of the material ABC News received is not part of the public domain and is subject to the protective order. (*Id.* at 7.)

A gag order may be a prior restraint on speech. *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985). Attorneys "do not lose their constitutional rights at the courthouse doors." *Id.* Here, Plaintiffs' counsel states that the San Diego Tribune and Plaintiffs' counsel had no contact prior to the article being

published. (Doc. No. 125 at 5.) Further, ABC News decided to do the story and then contacted Plaintiffs' counsel about the court filings. (*Id.*) ABC News also contacted Defendants for comment and Defendants did provide a comment on the Nightline video clip. (*Id.*) Attorneys are allowed to comment on pending litigation under the First Amendment. *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1052 (1991). Here, the Plaintiffs' counsel's First Amendment interests and public's right of access outweigh Defendants' arguments.

Defendants argue that Plaintiffs' counsel's actions have impeded Defendants' right to a fair trial and impartial jury. (Doc. No. 123 at 4.) However, the news cycle is constantly changing. If this case proceeds to trial, likely few jurors, if any at all, will recall having seen the articles. The venire may be prescreened with regard to whether or not they have seen any news reports on this case. Further, through vigorous voir dire, counsel and the Court may ensure that a fair trial does result for all.

Defendants further attempt to establish a gag order is necessary because certain evidence was not part of the public domain. Defendants specifically point to following evidence as being improperly provided to the media: the phone calls of Mr. Chavez-Lopez and the video of his deposition. (Doc. No. 123 at 7–8.) Defendants argue that this evidence is not part of the public record. However, the transcripts of Mr. Chavez-Lopez's phone calls are on the docket and therefore, publicly accessible. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). Further, Plaintiffs' counsel is on screen for less than 30 seconds and all of her comments are public record. (Doc. No. 125 at 6.) Mr. Chavez-Lopez's phone calls nor Mr. Chavez-Lopez's deposition testimony were marked confidential pursuant to the Protective Order. (*Id.*)

Defendants request the Court to order Plaintiffs' counsel to produce any and all correspondence or communications, including documents provided, to any news outlet or reporter so that Defendants may investigate additional breaches of the Protective Order. (Doc. No. 123 at 9.) Defendants have not shown that any confidential material pursuant to the Protective Order was utilized by the media. Plaintiffs' counsel in the video clip did not

4

state any information that was not already public record. Mr. Chavez-Lopez's phone call and deposition were not marked confidential pursuant to the Protective Order. Further, Plaintiff's counsel at the motion hearing assured the Court and Defendants' counsel that nothing was turned over to the media that was subject to a protective order or that any of the material was confidential. (Doc. No. 127 at 56:1–4.) Therefore, this is not the situation that warrants the Court ordering Plaintiffs to produce what was delivered to the media. Further, CoreCivic was well aware of the ABC News segment prior to it airing. CoreCivic was contacted for comment and in fact provided its own statement for the media. Defendants have not met the high standard that warrants a restraining order in this situation.

## **CONCLUSION**

Based on the foregoing, the Court **DENIES** Defendants' motion for restraining order.

**IT IS SO ORDERED**.

Dated: September 17, 2019

Hon. Anthony J. Battaglia
United States District Judge